

RECEIVED

AUG 2 1 2025

*Karin Pannier*

*Librarian*

*Vienna C.C.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
prisoner.esl@ilsd.uscourts.gov

## ELECTRONIC FILING COVER SHEET

SCANNED
8/21/25

Please complete this form and include it when submitting any type of document, letter, or pleading. to the U.S. District Court for the Southern District of Illinois for review and filing.

<u>JOLLY, RONALD</u>          <u>505734</u>
Name                          ID Number

Please answer questions as thoroughly as possible and circle yes or no where indicated.

1.  Is this a new civil rights complaint or habeas corpus petition?          Yes or (No)

    If this is a habeas case, please circle the related statute:   28 U.S.C. 2241 or 28 U.S.C. 2254

2.  Is this an Amended Complaint or an Amended Habeas Petition?          (Yes) or No

    If yes, please list case number:  <u>24-CV-01489-JPG</u>

    If yes, but you do not know the case number, mark here: _____

3.  Should this document be filed in a pending case?          (Yes) or No

    If yes, please list case number:  <u>24-CV-01489-JPG</u>

    If yes, but you do not know the case number, mark here: _____

4.  Please list the total number of pages being transmitted:   ~~98~~  38 w/ cover
                                                                 ~~3 of 3~~

5.  If multiple documents, please identify each document and the number of pages for each document.  For example:  Motion to Proceed In Forma Pauperis, 6 pages; Complaint, 28 pages.

    | Name of Document | Number of Pages |
    |---|---|
    | MOTION FOR LEAVE TO FILE 3RD AMENDED COMPLAINT | 2 |
    | PLAINTIFFS THIRD AMENDED COMPLAINT | 95 |
    | COVER SHEET | 1 |

Please note that discovery requests and responses are NOT to be filed; instead they should be forwarded to the attorney(s) of record.  Discovery materials sent to the Court will be returned unfiled.

1     here. I need you to represent me.

2        THE DEFENDANT: That's when the attorney has a

3     problem with it, coming over to the jail. Well --

4        THE COURT: All right.

5        THE DEFENDANT: -- I'm not saying --

6        THE COURT REPORTER: I can't hear him when he's

7     interrupting you. I'm sorry. When Mr. Jolly is

8     interrupting you, Your Honor.

9        THE COURT: So, well, if you get ahold of a lawyer,

10    you are just going to have to tell him that you have

11    been told -- everybody has been told the conversation is

12    not going to be recorded. So even if it is recorded and

13    it is brought up later on, it wouldn't be able to be

14    used for any purpose because you've been told it was not

15    being recorded.

16          A lawyer is going to have to understand that

17    and give you an opportunity to decide if you want a

18    lawyer, who do you want to represent you, or if you

19    don't and you want to deal directly with the State. I

20    would like to have that decision made by Tuesday so we

21    can -- so don't get backed up against the jury trial and

22    you not having a lawyer and you have to represent

23    yourself, and that is a very difficult task. I'm not

24    saying you can't do it, but that is your only option if

you don't waive the speedy trial calendar on this case.
So that's what I want to do.

The state's attorney is going to see if the
sheriff can arrange for you to use the phone. The
lawyer is going to have to recognize that you've been
told, that everybody has been told your conversation is
not going to be recorded. Even if it is, it cannot be
used for any purpose.

THE DEFENDANT: I understand that. He has to come
back to the jail. At this point I'm serious about these
negotiations. Usually when you negotiate, you throw
something to somebody, they throw something back.
Right?

THE COURT: Right. I think Mr. Kakac is willing to
look at it and take a position by Tuesday on his
proposal.

ATTORNEY KAKAC: Yes.

THE COURT: So that's going to happen. I don't
want to overcomplicate this thing, but if you come back
on Tuesday and say, well, I hired a lawyer, then he will
have to negotiate with the lawyer.

THE DEFENDANT: Right.

THE COURT: But if you come back on Tuesday and
say, I haven't hired a lawyer yet. I'm still thinking

1  about it.  I want to negotiate on my own, we'll put that

2  on the record and you'll be able to do it.

3       THE DEFENDANT:  If he's serious about negotiating a

4  deal, I can do that on my own.  I feel like I've gotten

5  myself this far, I'm sure I can negotiate a deal as long

6  as the State is willing to sit down with me --

7       THE COURT:  He says he's willing to review it.

8  He's got several cases.  I don't know what all he's got

9  to do, but he's going to be able to have an answer for

10  you on Tuesday.  So right now I want to understand, you

11  don't want to waive your speedy trial calendar.  You

12  want to let it continue to run.  You want to confirm

13  your jury trial date on 21-CF-43 for July the 3rd?

14       THE DEFENDANT:  Yes.  And if the State is serious

15  about negotiating a deal, then I won't need the

16  discovery, but as of right now I'm not going to hire an

17  attorney until at least Tuesday when I hear back from

18  the State.  That way I can see if I can get something

19  worked out.

20       THE COURT:  That's fine with me, but I do want the

21  State to talk to the sheriff to see if there is some way

22  you can use the phone over there.

23       THE DEFENDANT:  Is there going to be some way that

24  Mr. Kakac has communication?  He'll negotiate or he'll

1   asking.  Would you care if I step forward?

2       THE COURT:  You come on up here.

3                   (Mr. Turpin approaching the bench.)

4       THE COURT:  What was your question?

5       THE DEFENDANT:  I was just -- we don't get to see the

6   news over here.  If I get a copy of that Supreme Court

7   Rule or so I kind of know what it says.  We don't get the

8   news over here.

9       THE COURT:  Mr. Turpin can get that for you, yes.

10      MR. TURPIN:  Yes.  Your Honor, and while -- while we

11  have -- while I have you here, your Honor, if you take one

12  minute.  I have -- it's something I dealt with the Sheriff

13  but I wanted to have clarified, your Honor, because the

14  Jail's policies previously have been that they -- they

15  didn't normally allow folks to come in face-to-face.

16      Your Honor, I'm going to have to take time to

17  review this discovery with my client.  And I know that the

18  Court has a history of ruling on these Motions.  I believe

19  that one was made in the Brodey Murbarger's case where

20  his -- specifically his attorney asked that he be allowed

21  to in-person review discovery with the Defendant and be

22  able to go in and visit him in-person.

23      As I think that speedy trial has been an issue in

24  the past, I'm going to have to be able to meet with my

1   client and talk over the discovery with him.  And I never

2   viewed that with him or -- or been able to seriously

3   discuss it with him.

4        I would ask the Court to -- I -- it hasn't been

5   an issue because I previously dealt with the -- the

6   Sheriff and I met with Mr. -- Mr. Jolly earlier.  But,

7   your Honor, just so that I can get a -- get a feel for it,

8   does the Court feel like that would be appropriate?

9        THE COURT:  Well, in -- in the Murbarger case, the --

10  all of the discovery was electronic and you -- you may be

11  getting it electronically, too.  I don't know.

12       But I did allow the Defendant Murbarger to have a

13  computer that was -- all it would do was to view the

14  discovery.  We had to -- couldn't have an Internet card or

15  anything in it.

16       MR. TURPIN:  Yes, sir.

17       THE COURT:  And he used that.  The Sheriff made

18  arrangements for him to view all of that discovery on the

19  computer.  And then I'm assuming that his counsel,

20  Mr. Murbarger met with him about all of that.  And they

21  probably hooked up the computer while he met.  But I

22  wasn't involved in that.  But, I mean, it -- it's

23  important that you be able to meet with your client.

24       So I -- I'm -- I'm assuming that that -- that

1   could be done.  And it's been done in the past.  So

2   there's no reason it won't be.

3       MR. TURPIN:  Yes, your Honor, and I -- I've made some

4   clarifications.  But there has been a little bit of a

5   foggy -- there's been a little bit of a fog about whether

6   or not that is something we can get done.

7       Your Honor, I will -- knowing the Court's

8   feelings and what you just said about the importance of

9   being able to meet with your clients, I'll relay it to the

10  Sheriff.  If there's a further issue, I'll let the Court

11  know.  But I don't imagine it's going to be.  I think we

12  have it straightened out.  But I -- I -- I appreciate the

13  Court's candor.

14      THE COURT:  Do you anticipate using a computer for

15  this or you going to print it out and have it in

16  paperwork?

17      MR. TURPIN:  My --  my understanding of it -- and I

18  haven't seen it yet personally, your Honor, but it's my

19  understanding there are videos that are -- are going to be

20  coming to me in discovery.  And I'm going to have to have

21  some opportunity to be able to view them with my client,

22  as well as be able to show him papers, you know, not

23  through fortified glass.

24      And I think maybe I -- I handled this with the

1  Sheriff.  Before I give him any -- any further notice

2  about questioning his policies not talk to him a little

3  further about that.  I just wanted to get the Court's

4  feelings about it and -- and inform the Court that I -- I

5  do intend to do that.

6      THE COURT:  Well, there has to be a way to do it.

7  Now, I -- I'm -- I'm going from memory, but it's my memory

8  that Defendant Murbarger owned that computer.  Or

9  somebody -- either his -- he or his counsel paid for a

10 brand new computer and it was then used and left at the

11 Jail.  And he -- he -- the Sheriff somehow made

12 arrangements for him to use it to view the discovery.  And

13 I don't know the details, where that was, if it was in the

14 conference room, was in the cell, or wherever.

15      But it -- if we get down to the -- I'll certainly

16 give Mr. Jolly the same benefit.  But in that instance we

17 had to buy a brand new computer.  It had to be examined

18 and -- to make sure that there wasn't any way to

19 communicate with the outside world.  And you can just use

20 it for the discovery.

21     MR. TURPIN:  Well, it's -- it's -- it's my position,

22 your Honor, that I could not -- I -- without the Court's

23 leave, I can't leave the discovery with the Defendant,

24 anyway.  So I have to keep it -- I have to keep it in my

1    possession.  So what -- what -- you know, just --

2        THE COURT:  We -- we can enter an Order that you can

3    disseminate discovery to the Defendant and --

4        MR. TURPIN:  Your Honor, --

5        THE COURT:  -- there are rules there as far as

6    anything that has to be redacted.

7        MR. TURPIN:  -- more -- more what I envision and, like

8    I say, I want to talk it over with the Jail Administrator

9    or with the Sheriff, I'm sure some reasonable -- some

10   reasonable accommodation can be -- can be found.  But what

11   I had in mind was putting it on my personal laptop

12   computer, bringing it in.  If they want the -- want to be

13   present while the Defendant watches the video and I can

14   talk to the Defendant about it later, that's fine; but I

15   am going to have to review this discovery with him.

16        So there's no problem as -- we don't have a ripe

17   issue yet, your Honor.

18       THE COURT:  Well, we may be able to -- if you want to

19   use our own computer, I mean, I -- we can okay that, if

20   the computer -- as long as you're there with it, I think

21   that would work, too.  Don't you, Mr. Easton?

22       MR. EASTON:  I agree your Honor.  There's a

23   distinction, as your Honor well knows, counsel well knows,

24   between disseminating discovery and reviewing discovery.

1    THE COURT: So that might be the better method in your

2  instance, if you want to -- if there's anything that needs

3  to be viewed on the computer, you can -- you're being an

4  officer of the Court, and you can use that computer only

5  for that purpose in the Jail.

6        And in Murbarger we had such an issue there was

7  I -- dozens of CD's. It was huge, huge amount of

8  discovery. And it was only on a digital media, if that's

9  the right word. There were no paper documents.

10    MR. TURPIN: Your Honor, I hate to dance around the

11  issue. And so I'll just -- so I'll be frank, I'm not sure

12  there's a problem. But there's been a -- reasonable

13  people sometimes can disagree about the law. And although

14  the -- the Code of Criminal Procedure provides that I'm

15  able to meet alone and -- and without -- and in secret and

16  also at the place of confinement, there's been a little

17  bit of a difference of opinion about what the place of

18  confinement is, whether that's through fortified glass or

19  in with the Defendant. And I've spoke with the -- the

20  Sheriff about that. And I think that reasonable

21  accommodations are going to be made and I hope so. If it

22  becomes a future problem, your Honor, I'll address it with

23  the Court but I think it's going to be okay.

24    THE COURT: I would say it was. And I'm not in charge

R-333

1  of the Jail.  You know, I don't make the rules and

2  enforcement.  But I know that we did get -- we got the

3  Murbarger case completed.  And it had tremendous amount of

4  discovery that was reviewed by the Defendant in the Jail.

5  So I --

6      MR. TURPIN:  Yes, sir, your Honor.

7      THE COURT:  -- feel like in this case we can get the

8  same accomplished and maybe not take buying a new computer

9  if you're in charge of yours in taking it in and taking it

10 back out.

11     MR. TURPIN:  Well, the Wayne County Jail's always been

12 very professional and accommodating to me and I have no

13 doubt that I'll be able to resolve sort of agreement

14 with -- with the Sheriff.  And I appreciate Court's time

15 about the issue.

16     THE COURT:  If nothing else, that's all for today.

17 Mr. Jolly, you can tell the Correctional Officer that you

18 can sign off at this time.

19     MR. TURPIN:  Thank you, your Honor.

20     THE DEFENDANT:  Thank you, your Honor.

21     THE COURT:  You're welcome.

22                    (End of Proceedings.)

23              *    *    *    *    *

24

THE COURT: We are on the record. This is People of the State of Illinois v. Ronald Jolly, 2023-CF-43, 2022-MT-159, 2022-MT-15, 21-CF-147, 21-CF-131, 21-CF-18. Set for Status Hearing today. Attorney Turpin appears on behalf of Mr. Jolly. Mr. Jolly is in the Jail, in the Sheriff's custody today. Assistant State's Attorney Easton appears.

We had a conversation before we went on the record concerning the Status Hearing. Mr. Turpin, you want to put on the record what your request is?

ATTORNEY TURPIN: Your Honor, I believe our conversation had started on -- around the idea that I was understanding that Mr. Jolly was going to be here because this was an in-person. And I planned to meet with him as the Sheriff's new policies are attorneys aren't to meet with their clients at the Jail in-person.

The Court had -- had suggested possibly that they -- that the Court would enter an Order that I be able to meet in the same physical space with no barriers -- physical barriers between myself and Mr. Jolly and in private. As it were, prior to the -- the implementation of the more recent policies and I -- I thought that -- I -- I suggested to the Court that I thought that that would work for my purposes and that would be the ongoing

R 349

1    case between myself and Mr. Jolly.  I don't know where the

2    Court stands on that fully, but I -- that's the way I

3    understood it, your Honor.

4        THE COURT:  Any objection, Mr. Easton?

5        ATTORNEY EASTON:  Your Honor, the only objection is

6    it's my understanding that the policy applies to everyone

7    that it is an in-person visit.  I think that Attorney

8    Turpin objects to talking with his client through the

9    phone.  Attorney/client calls are not recorded.

10        So the State believes that the -- the policy

11   is -- is fine and that no accomodation is necessary, your

12   Honor.

13       ATTORNEY TURPIN:  Your Honor, the Code of Criminal

14   Procedure says that I get to meet with him in-person and

15   although it doesn't -- I think there is case law that

16   defines it and that was some of what I was planning on

17   bringing up in my Complaint For Mandamus.  However, your

18   Honor, there is a physical barrier and also the phone does

19   say it is recording.  I was there the other day to speak

20   to another Defendant that was asking to speak with me and

21   I couldn't talk with him per the policy.

22        So, your Honor, I do dispute -- I do dispute the

23   State on that point because the phone says it's recording

24   and there's a sign that says it's recording.

1    THE COURT:  I could see how that policy would make an

2  attorney and client uncomfortable.  I am going to order in

3  this case, considering Mr. Jolly has these serious charges

4  against him, Mr. Turpin is here to see Mr. Jolly, I'm

5  going to order the Sheriff to provide physical space not

6  impeded by a barrier or phone for Mr. Turpin to talk to

7  his client that's not recorded.

8    ATTORNEY TURPIN:  And, your Honor, what --

9  additionally, I would like to be able to bring discovery

10 for him to be able to look at, physical discovery that I

11 been provided by the State, such as pictures, documents,

12 police reports, other things like that.  I'd like to --

13 I -- I don't envision that being an issue but I just don't

14 want -- I don't want to have the issue, your Honor,

15 because I didn't envision this being the -- the other

16 physical space being an issue.

17   THE COURT:  Yes, you'll be allowed to show him the

18 discovery.  Anything else, Mr. Turpin?

19   ATTORNEY TURPIN:  Nothing, your Honor.  I appreciate

20 the Court's --

21   THE COURT:  We are set for a Pretrial in-person

22 December 12th, at 1:30 and still on for Final Pretrial

23 February 13th, '24 and February 20th, '24, at 9:00 a.m.

24 Anything else, Mr. Easton?

R 351

1       ATTORNEY EASTON:  No, your Honor.  Thank you.

2       THE COURT:  End of record.  Thank you.

3                   (End of Proceedings.)

4                *    *    *    *    *

1  prepare for this Motion.

2      THE COURT:  Okay.  Mr. Turpin, yes?

3      ATTORNEY TURPIN:  I did not notice my Motion for

4  today's hearing.  The -- the way that I understand the

5  statute to read is 725, of course, ILCS

6  5/110-6.1(a)(8)(f)3.5.  That's (a)(8)(f), as in food, 3.5,

7  says that all hearings, whenever the Defendant is in

8  pretrial custody, have to be conducted in-person.

9      Furthermore, the same citation only I/5, I/5 says

10  that every time that we have a -- not a -- a hearing, the

11  Court is to review the -- the conditions -- or, the -- the

12  State's Petition For Detention every single time.

13      It is automatic.  It does not require that there

14  be any kind of notice to the State.  And it's supposed to

15  be done every single time.  And that's what I'm here for.

16      The other Petition that I have filed this

17  morning, your Honor, that's -- if -- if we don't make it

18  anywhere with this hearing, that I do believe is an

19  automatic thing under the statute, then it would be on

20  my -- on my Motion that I prepared, but I had --

21  furthermore, the State would like for me to -- and has

22  suggested that I waive the automatic hearing.

23      However, in violation of the Court's previous

24  Order, the Sheriff has -- has made it almost impossible

for me to meet with my client. I do believe because of his dislike for my client and possibly for myself. And so I'm not able -- I'm not able to do it. They put me down. They search me every time I go in there, that kind of thing.

So I have spoken to him on the phone; however, I've had opportunity for him to waive his automatic hearing and so I don't know -- I would have to talk to him first and the State's trying to -- attempting to have the Court hear it outside of his presence by even what we're doing right now.

So I don't know where -- where to go with it, but I think he would have to waive it, if I was even going to agree to that. So I don't know, your Honor.

THE COURT: Mr. State's Attorney?

ATTORNEY KAKAC: Judge, there's a lot packed into that response but I guess to -- to try to clarify it, I'm getting ready to go to work this morning and I get a text from Mr. Turpin, hey, I filed a Motion. Just giving you a heads up. So when I get to work, I print the Motion. The Motion is electronically on file. It's a -- kind of a procedural attack on whether or not the Motion For Detention background on September the 18th was procedurally correct at the time.

1          (All parties reappear in open court.

2          Defendant now appears in open court.)

3     THE COURT:  The cases of People of the State of

4  Illinois v. Ronald D. Jolly, 21-CF-18, 21-CF-131,

5  21-CF-147, 21-MT-15, 21-MT-59, and 23-CF-43.

6          State appears by State's Attorney Kakac.  The

7  Defendant appears in person, currently in the custody of

8  the Wayne County Jail.  The Defendant also appears with

9  his counsel, Attorney Johnathan Turpin.

10          The cases comes before the Court for Pretrial --

11  for Pretrial Conference today.  You may proceed.

12     ATTORNEY KAKAC:  Judge, the State has nothing to

13  present at this time.

14     THE COURT:  Do we have a Final Pretrial already

15  scheduled for February 13th, at 9:30, and Jury Trial,

16  February 20th, at 9:00?

17     ATTORNEY KAKAC:  That's true, your Honor.

18     THE COURT:  Are we confirming those dates, Mr. Turpin?

19     ATTORNEY TURPIN:  No, your Honor.  I had planned to

20  put in a Motion to Continue those dates because I have not

21  been able to meet with my client.  And I -- I can get that

22  Motion on file.  I don't have that ready to be heard or

23  anything like that.  But, no, I am going to be -- just to

24  let the Court know, I am probably going to be asking for a

1  continuance of that.  I -- I have to run that by my client
2  as it is a time issue depending on -- on how things go
3  with his detention but that is -- that is my plan as I
4  haven't been able to even bring documents and other things
5  into -- into the Jail the way that Judge Owen had
6  directed.
7      THE COURT:  Okay.  So at -- excuse me, at some point
8  and time, if you file that, then you'll set that for
9  hearing?
10     ATTORNEY TURPIN:  Yes, your Honor.
11     THE COURT:  Before the February 13th date?
12     ATTORNEY TURPIN:  Yes, your Honor.  Yes, your Honor.
13  I'll -- I'll try to do that not to prejudice the State or
14  the Court in anyway.  Thank you.
15     THE COURT:  Thank you.  Is there anything else to take
16  up at this time?
17     ATTORNEY TURPIN:  Yes.  Yes, your Honor.  I don't
18  know -- I don't want to put the cart before the horse but
19  it is -- pursuant to the statutes that we discussed
20  earlier when the Defendant wasn't present, your Honor, the
21  State has the burden at every single appearance to show
22  that there are -- there is -- that detention is necessary.
23  And that is 725 ILCS 5/110-6.1(a)(8)(e)3.  And they have
24  to prove that by clear and convincing evidence.

1   142. I -- is the case number. I -- whatever his 22 case

2   was, there was a -- the case before Judge Owens, the

3   appearance before Judge Owen the last time. The -- the

4   Court made a docket entry that said that I would be

5   allowed in the Jail to meet with my client.

6           And, your Honor, I have -- I went over there and

7   encountered quite a bit of trouble. I would like, if the

8   Court would add to that docket entry that I be able to

9   bring electronic device in with me. So that I can review

10  discovery with my client and also that we be allowed to

11  meet in the Law Library. Because where they put us was, I

12  believe -- I believe to be an intentional place so that we

13  couldn't look -- sit down and look at each other.

14          There was no place we could both look over at the

15  table at something and it was -- echoes horribly in there,

16  your Honor. And I would ask that the Court make an

17  allowance for me as the statute specifically in part (H)

18  says that I be allowed to meet privately with my client

19  and the Sheriff make reasonable accommodations under the

20  Detention Statute. That he make reasonable accommodations

21  for me to meet privately with my client.

22          I would just ask that the Court make it the Law

23  Library and that I not be -- if the Court can see fit that

24  I not be searched beforehand and several other things. I

1   get a pat down and -- and all of that sort of stuff and

2   then couldn't bring anything in with me.

3           So --

4   ATTORNEY KAKAC:  Your Honor, I -- Mr. Turpin is right,

5   I'm not ready to address that in any great detail, but I

6   can say that historically the Resident Circuit Judge here,

7   certainly myself, possibly other Judges are very reluctant

8   to get involved in ordering the Sheriff of Wayne County

9   about how to take care of business in -- and to deal with

10  the things that he does inside the Jail.

11          And Mr. Turpin's correct, if I was at the Judge

12  Owen -- Judge Owen hearing about this in the past, I don't

13  remember.  That having been said, I'm also, of course,

14  completely in agreement with the idea that -- that

15  attorneys got -- have to be able to meet with their

16  clients in confidential circumstances.  But I think

17  Mr. Turpin might agree with me that this has been kind of

18  around and around things almost -- well, since before he

19  was even -- before he even entered his appearance in this

20  case.  Because he was meeting and trying to meet with

21  the -- with the -- with Mr. Jolly at a point when I think

22  he was still deciding whether or not he was going to

23  represent Mr. Jolly.

24          And then that -- that -- that developed into an

R 386

1    attorney/client relationship now.  I've spoken with the

2    Sheriff several times.  The Sheriff has several times

3    indicated to me that he was -- did believe that he was

4    operating within the Order of the Court to provide access.

5         Now, I -- I think what I'm trying to say at this

6    point in the afternoon is, maybe the best thing to do is

7    for me to try to determine whether or not there's some

8    common ground between what Mr. Turpin wants and what the

9    Sheriff is willing to allow.  Otherwise I don't know of

10   any way to do it other than for him to call the Sheriff

11   over here and for him -- the Court to make some sort of a

12   ruling about whether or not what the Sheriff and his

13   current processes with respect to Mr. Jolly are

14   appropriate or not.

15        I know that bringing devices into the Jail is a

16   very big problem.  It's a very big security problem.  Not

17   accusing Mr. Turpin of anything but I think bringing -- I

18   think bringing a -- an electronic device into the Jail

19   without permission of the Court, frankly, is a crime or it

20   could be.

21        So -- and it -- again, it presents all kinds of

22   security issues.  I'm not aware of any business about pat

23   downs.  I don't know what the procedure is with other

24   attorneys.  Mr. Turpin suggests earlier today that it has

1    been conveyed to him somehow that I had told the Sheriff

2    that he needed to be searched before he went into the

3    Jail.  I don't know what he's talking about.  And since

4    then I've talked to the Sheriff that says he doesn't know

5    what he's talking about.  So there's that.

6            But in all of the time that I've been here, I've

7    never had this issue with anybody.  And I feel that -- or

8    had to deal with it, and I feel that with respect to our

9    very reasonable Sheriff and his very reasonable policies,

10   we can get this worked out here.

11           I don't understand, quite frankly, why this is

12   becoming such a problem.  But I will tell you that the

13   only other time that I've had a case involving electronic

14   devices back in the -- in the Jail as Mr. Turpin is asking

15   for, was a case that resolved a couple of years ago.  It

16   was a case involving a murder and it was a case involving

17   literally thousands of pages of documents, and photos, and

18   records and in that particular case, Judge Molt, if I

19   recall correctly, entered an Order that it was okay for

20   Defense Counsel to meet with his client outside of the

21   Jail and in a -- in another secure area of the Jail.  But

22   it was only after the Defendant in that case, at his own

23   expense, provided a -- his own computer, which had been

24   verified by an outside tech guru that was not capable of

1   connecting in any way to the Internet or the worldwide
2   web.
3           So what I'm saying is there was an opportunity
4   there that -- that made that extraordinary and it was
5   under extraordinary circumstances, involved thousands of
6   pages of discovery, and images over about six and a half
7   years of investigation, between ISP, FBI, local police,
8   you name it.  Is this that case?  I don't think so.
9       ATTORNEY TURPIN:  If you --
10      ATTORNEY KAKAC:  Pardon me.  Am I trying to make any
11  direct comparison?  I don't think there is any.  What I'm
12  saying is I continue to believe that -- that the Sheriff
13  of Wayne County is reasonable and I intend to try to
14  understand exactly what it is that he's requiring or not
15  allowing that is getting in the way of Mr. Turpin's
16  representation.  That's all.
17      ATTORNEY TURPIN:  Your Honor, I'm glad there's no rule
18  against the filibuster.  In 221 -- or 2021-CF-127, Judge
19  Owen on 10-21-23 ordered that -- Defendant and Attorney
20  Turpin appears.  ASA -- ASA Easton appears.  And this
21  is -- this is Ron jolly, I believe, your Honor, over zoom.
22  I don't believe that he was brought over.  It said that he
23  appears but this -- not according to the fact he was not
24  brought over.  And reports, "Need alone time with client.

1  Court orders" -- now, this is because we had to meet
2  through the glass, over a recorded phone in a -- in a echo
3  area.  Right?  Where it's -- I mean, it's horrible to meet
4  together.  And "Need alone time with the client.  Court
5  orders Sheriff to allow Attorney Turpin to have in-person
6  meeting in same physical state with Defendant, not to be
7  recorded.  Copy of entry to Sheriff."  Okay.

8         Now, your Honor, I warned Judge Owen then that
9  Mr. -- Mr. Kakac's honest and fair judge that never -- or,
10 not judge, Sheriff would never -- never do anything in
11 derogation with the Court's Order would try everything
12 that he could to misunderstand and it needed to be very
13 specific.

14        Your Honor, I was put into a room where everyone
15 faces one direction and there's partitions between where
16 the stools are.  And it is a concrete room with everything
17 in it steel and glass.  And you can't -- and everyone can
18 hear.  Not only that but you can't sit and -- and actually
19 look at anything.

20        And what the State's Attorney would have you
21 believe that after he says there's no way to ameliorate
22 the dangers with Ron Jolly and that he can't be outside in
23 the world; that it's such a danger that I be able to go in
24 and meet with my client over a -- over a desk, to be able

1    to look at something with him, right, and what this is is

2    just an opportunity to -- and -- and the thing is, your

3    Honor, him doing anything to keep me from having physical

4    access to my client is -- is official misconduct, which is

5    a Class III felony, your Honor.  And it specifically says

6    it in the law.  I can show it to you, if you would like.

7         Now, do I think anything about that's going to be

8    done?  No.  But, your Honor, I'm left with no good options

9    here.  I mean, there's -- there's no good options.  I

10   can't bring anything in.  I can't talk reasonably with my

11   client in private.  They do everything they can and -- and

12   whenever -- and pat me down and search me.  And I have to

13   hold -- and that's not the way it is anywhere else nor is

14   there any law that says they can do this.

15        And, furthermore, your Honor, I don't believe

16   there's any law that says I can't bring a communications

17   device into a Jail.  I don't believe that's so and I would

18   like to see a law that says that because it doesn't.

19        All I would ask -- people do it every day.

20        All I would ask, your Honor, is for some -- is

21   for some concessions that make this possible because

22   they've done everything that they can, everything that

23   they can to make it impossible.  I've never had it happen

24   anywhere else.

1    THE COURT:  Well, I'm not familiar with the way Wayne

2    County Jail is set up or the rooms that they have

3    available or anything of that nature.  But, I mean, I --

4    looking at Judge Owens' Order that the Sheriff would allow

5    you, Mr. Turpin, time in person meeting in the same

6    physical space with the Defendant not to be recorded.

7         So if they can provide that, I don't see that

8    that's a violation of the Order but they are -- I mean, I

9    think that was what the Order was from Judge Owen on

10   October 31st.

11   ATTORNEY TURPIN:  I would ask the Court to make it in

12   the Law Library, if you would add that, your Honor, and --

13   and allow me.  Because discovery was tendered to me,

14   electronic form, that I cannot produce.  Like, it's --

15   there are videos, your Honor, that I cannot show to my

16   client.  I can't do anything with them.  Your Honor, if I

17   don't have some sort of way to play him one, he can't

18   review them with me.

19        He can't look at the electronic means that the

20   State has given me for -- for discovery.  It lends itself

21   to an absurd result, your Honor.

22   THE COURT:  Well, I think that with -- I mean, I --

23   most of the experience that I've had with Jails is they do

24   not allow electronic devices in.

1    So I think that Mr. Kakac can discuss that with

2 the Sheriff about allowing that because in order to

3 discuss the discovery, if it is electronic, there's going

4 to have to be a way for that to be shown.  That's not on

5 your electronic device, it's going to have to be some

6 other method that's available that can be plugged into or

7 whatever so that your client can review it.

8    Not familiar with the Law Library.  I don't know

9 if there's any access there or if it's recorded or not

10 recorded in there or anything of that nature.

11    So I think the best way to handle this is to

12 allow the State's Attorney to discuss it with the Sheriff

13 and make sure that he's in compliance with the Order.  And

14 then see at -- how it can be handled where you can review

15 the electronic discovery with your client.

16    If that's not -- if their policy is actually no

17 electronics, then they'll have to figure out a way to let

18 you be able to do that, whether that's through their own

19 system or, I mean, presumably it came from them anyway.

20 So they should have that, I would think.

21    Are you wanting to show that on your phone?  Is

22 that what you're wanting to take in?

23    ATTORNEY TURPIN:  Any -- any -- your Honor, I could --

24 I can take a laptop in.  I can take anything in.

1    THE COURT:  I mean, obviously the stuff that can be

2    printed can be printed and take -- taken in and shared

3    with him.  But there's electronic discovery, going to have

4    to find some way of reviewing that with the Defendant.

5        ATTORNEY TURPIN:  Well, your Honor, --

6        THE COURT:  Would that be here in the courthouse, in

7    this room that counsel tend to go to with clients?  I

8    never even been in that room.  Is there capability for

9    that to happen there?

10       ATTORNEY TURPIN:  Your Honor, I know that you weren't

11   here but actually I was told and I think Mr. White can

12   possibly confirm this, that they don't -- that the

13   security isn't good enough at the Wayne -- at Wayne County

14   Courthouse and that they did not want to bring my client

15   over.  And if I wanted to meet with him, I had to meet

16   with him at the Jail.  And they refused to bring him over

17   for me to meet with him at -- in this room here.  That has

18   happened and I think the State's Attorney is aware of

19   that.

20       THE COURT:  Did that just happen?  Didn't you meet

21   with him in that room?

22       ATTORNEY TURPIN:  It did.  It did, your Honor.  That

23   is what I had been told before.

24       ATTORNEY KAKAC:  So, your Honor, I think it has to be

1    put into context.  I don't think that the -- that that

2    discussion kind of entails detailing someone specific.

3    Probably would have to be hired over above the regular

4    schedule to come over and sit with Mr. Jolly **ad nauseam** on

5    some morning or afternoon over here in the courthouse.

6         Furthermore, Mr. Vinson, who is our -- typically

7    our Courthouse Bailiff, doesn't have time, with everything

8    else that he has going on, to -- to provide security in

9    the courthouse and the courtroom to sit over here, again

10   **ad nauseam,** while Mr. Jolly goes over these things with

11   his Attorney.

12        I'm not trying to get in the way of an

13   attorney/client relationship but I think you make a good

14   point and that is you don't know what the -- the inside of

15   that Jail looks like.  You don't know what they are doing.

16   You don't know how they're doing it.  You don't know how

17   they record it or it's not.  And what I'm telling you is

18   I'm willing to take a look at Judge Owens' Order and talk

19   with the Sheriff and find out what he's doing, why he

20   believes it's in compliance with the Judge's Order and sit

21   down and talk with him.

22        And if -- and I guess, you know, differ with him

23   and instruct him otherwise if I don't think it's being

24   complied with.  I mean, I -- I typically don't try to tell

1  the Sheriff what to do and how to run his Jail.  And I'm

2  not aware of any other Judges who do you that in any other

3  counties either.

4      ATTORNEY TURPIN:  They do, your Honor.

5      ATTORNEY KAKAC:  Because it's not a judicial function,

6  essentially the oversight of the Jail.  It's a law

7  enforcement function and it's a -- it's a Sheriff

8  function.

9          So --

10     THE COURT:  Well, at this point and time I'm not

11  inclined to adjust Judge Owens' entry or Order until some

12  more digging is done into it and we find out what the

13  problems are.

14         So I think that the concerns of Mr. Turpin have

15  been raised.  They have been brought to Mr. Kakac's

16  attention and that can be addressed hopefully before we

17  come back to court next week and see if there can be some

18  sort of resolution to giving you access privately with

19  your client, with your attorney.  I mean, obviously that

20  is important to be able to review the discovery and we

21  need to find a way to get that done.  But I'm not familiar

22  with the set-up over there.  And I'm not going to try to

23  dictate how it should happen without being aware of what

24  the set-up is.

1          So we will set the case for the -- the Motion
2    Hearing on the 20th, at 9:15.  We'll set aside 30 minutes
3    for that and then in the interim hopefully Counsel can
4    communicate with the Sheriff and each other about how to
5    remedy the issues that are -- that are being raised today.
6          ATTORNEY KAKAC:  I'll make an effort to get with the
7    Sheriff and Jail Administrator in advance of that date.
8          THE COURT:  That would be excellent.  Is there
9    anything else to take up today?
10          ATTORNEY KAKAC:  Not from me, your Honor.
11          ATTORNEY TURPIN:  Nothing further, your Honor.
12          THE COURT:  Okay.  All right.  That will conclude the
13    case.  Thank you.
14                    (End of Proceedings.)
15                *    *    *    *    *
16
17
18
19
20
21
22
23
24

EXHIBIT #11

# WAYNE COUNTY JAIL INMATE REQUEST AND GRIEVANCE FORM

## Chris Otey – Sheriff

INMATES NAME ___Jolly___    CELL BLOCK ___ISO___   CELL # ___5___

## ***INSTRUCTIONS***

1) Print all information.
2) Provide as much information as possible. If more writing room is necessary attach an additional sheet of paper to this grievance.
3) Place an (x) in the box you are requesting information/ assistance on.
4) Complete One (1) request/ grievance form for each section checked.

**Administration:**
- ☐ Complaint about treatment
- ☐ Disciplinary Reclassification
- ☐ Request special visit
- ☐ Medical Co-Payment Grievance

**Classification Section:**
- ☐ Request Trustee Status
- ☐ Request Reclassification
- ☐ Complaints Regarding other inmates

**Court Liaison:**
- ☐ Release Date       ☐ Bond Amount       ☐ Trial Date Set
- ☐ Holds/ Detainers   ☐ Other             ☐ Extradition
- ☐ · Request Information

**Facility Programs:**
- ☐ Bible Study        ☐ Library Services
- ☐ Drug Counseling    ☐ Alcoholic Anonymous
- ☐ Educational Classes ☐ Other

**Medical Section:**
- ☐ Sickness           ☐ Medication
- ☐ Depression         ☐ Dental Concern
- ☐ Injury             ☒ Other

**Other Concerns:**
- ☐ Personal Property  ☐ Commissary       ☐ Laundry    ☒ Other
- ☐ Shift Supervisor   ☐ Request Information ☐ Trust Account Balance

Explain reason for request or grievance: ___FOIA REQUEST___

Inmates Signature: _____   Date: __11-10-23__

Staff Response: This is a Jail Grievance, not a FOIA request. Please Mail your FOIA request to the appropriate agency.

Staff Officer Signature: ▇▇▇▇▇▇▇   Date: __11/16/23__

TO: F.O.I.A. Officer:                          11-10-23

1)     I'm requesting copies/records of any and all Doctors orders w/ prescription orders from 3-6-23 Till 11-10-23 under Freedom of information act.

2)     also I'm requesting copies of every grievances that I have written from 3-6-23 till 11-10-23. under the Freedom of information act.

                     Thank you

Exhibit #12

**Measured by**

| Time | Measured by |
|------|-------------|
| 2:17 PM | Brooke E. Phelps |

## Physical Exam

| Exam | Findings | Details |
|------|----------|---------|
| Constitutional | Normal | Well developed. |
| Eyes | Normal | Conjunctiva - Right: Normal, Left: Normal. |
| Ears | Normal | Inspection - Right: Normal, Left: Normal. |
| Nose/Mouth/Throat | Normal | External nose - Normal. |
| Respiratory | Normal | Effort - Normal. |
| Musculoskeletal | Normal | Visual overview of all four extremities is normal. |
| Psychiatric | Normal | Orientation - Oriented to time, place, person & situation. Appropriate mood and affect. |

## Completed Orders (This Visit)

| Order | Details | Reason | Side | Interpretation | Result | Initial Treatment Date | Region |
|-------|---------|--------|------|----------------|--------|------------------------|--------|
| Patient Health Questionnaire (PHQ-2) | | | | 2 - Further testing indicated | 2 | | |

## Assessment/Plan

| # | Detail Type | Description |
|---|-------------|-------------|
| 1. | Assessment | Mild episode of recurrent major depressive disorder (F33.0). |
| | Impression | Managed on seroquel 200XL. |
| 2. | Assessment | Chronic low back pain without sciatica, unspecified back pain laterality (M54.50). |
| | Impression | Pt was referred to pain management, unable to be seen as they require him to be unshackled and pt is a flight risk. |
| 3. | Assessment | Essential hypertension (I10). |
| | Impression | Managed on losartan. Last check on 11/30, bp was 187/105. Pt has refused checks since then. Increase to 100mg daily. Call with updated readings in approximately 1 month. Follow up in 6 months. |
| 4. | Other Orders | Orders not associated to today's assessments. |
| | Plan Orders | The patient had the following order(s) completed today: Patient Health Questionnaire (PHQ-2). Interpretation: 2 - Further testing indicated, Result details: 2. |

## Care Guidelines (Detailed)

| Guideline | Status | Due | Action | Last Addressed | Comments |
|-----------|--------|-----|--------|----------------|----------|
| Colonoscopy | due | 12/08/2023 | | | |
| Depression screening | completed | 12/08/2024 | Completed on | 12/08/2023 | |

Jolly, Ronald   000000005768 05/16/1975 12/08/2023 02:00 PM 5/7

ExHibiT #13



Christopher Ballard, MD
Merle Lafikes, MD
Jodi Pelegrin, DO
Mervin Leeder, MD
Arunima Saxena, MD
Francis Guerre-Bauman, MD
Kayla Bell, PA-C
Kristen Harris, PA-C

John Snowden, PA-C
Deandra Thompson, PA-C
Sharon Bartley, APN FNP
Christina Frymire, APN FNP
John Gitmore, APN FNP
Ross Herdes, FNP
Sherry Mewes, APN FNP
Priscilla Poore, NP

D. Wayne Stennett, APN FNP
Stephen Welty, APN FNP
JoAnn Smith, PMHNP
Jeff Wood, LCSW
Amy Barton, LCSW
Michaela Harrison LCPC

**HORIZON**
H E A L T H C A R E
Caring Through A Lifetime.

213 NW 10th Street, Suite A │ Fairfield IL. 62837
P: (618) 842-4617    F: (618) 842-4743

Patient:            **Ronald  Jolly**
Date of Birth:      05/16/1975
Date:               11/08/2023 10:30 AM
Visit Type:         Office Visit

This 48 year old client presents for follow up of Hypertension, follow up of Back pain, follow up of L ankle injury and follow up of Depression.

# History of Present Illness
## 1. Follow Up of Hypertension

Risk factors include male gender and obesity.  Pertinent negatives include chest pain, claudication, dyspnea, fatigue, hematuria, irregular heartbeat/palpitations and vomiting. Additional information: F/U on untreated HTN. He was put on Lisinopril 20mg in April for elevated BP as this was the medication he had taken in the past for his HTN. At visit in July he stated he has stopped taking it in Jun

Comments: as it made his ankles painful and swollen. He declined any other medication at that time. He was put on Losartan 25mg in August but at follow-up visit stated he stopped taking it because he felt the Wayne County jail should have more healthy food and work-out equipment so he would not have HTN and need medication. No medications since then. BP today is 147/101. He is stating he would like to try the Losartan again.

## 2. Follow Up of Back pain

Additional information: Patient is requesting referral back to the FMH Pain Clinic for his chronic LBP. He has filed a grievance with Wayne County jail that they are not allowing him treatment for his back pain by not allowing him to see the Pain Clinic.

Comments: Patient was seen at FMH for this issue in 2018 by Dr. Bhaskara and injections done in May 2018 which helped his pain. He then continued to be treated by Dr. Bhaskara when he moved his practice to Eldorado into 2020. He has not seen him in the past several years and no recent X-rays or MRI. Was taking Mobic for pain then. Dx of bulging disc.

Exhibit # 14

Patient referred back to FMH Pain Clinic in March of this year by K. Bell and it was recommended by Pain Clinic that patient see PT first so appointment was made with them. This appointment with PT was canceled due to patient's disruptive/violent behavior at the jail facility. He was deemed to be too high of a security risk to take to PT at that time.

Patient was referred to the Pain Clinic in August and had lumbar X-rays done in anticipation of that visit. When Pain Clinic tried to schedule appointment they were told he was too high of security risk to schedule the appointment. I was asked for my opinion and I stated that this was a chronic not an acute problem. Patient should be seen in Pain Clinic when security risk lessened per the judgment of the jail personnel.

### 3. Follow Up of L ankle injury

Pt seen in September for injury to L ankle which occurred in approx July when he slipped in the shower and caused an inversion motion of ankle causing lateral pain and heard a loud pop. At the time the ankle got swollen and painful. Ice was applied and got some better but still painful w/ certain motions and locks up occasionally. X-ray done at that visit which was negative for fracture. Patient states the ankle continues to be sore with activities and continues to be swollen.

### 4. Follow Up of Depression

Patient was put back on Seroquel 100mg BID in March when first incarcerated, as he had stated this was what he had been on in the past for depression. He states today that the medication is not given 12 hours apart and that affects his mood. He states medications are given at 6:30AM and 5:00PM but sometimes the times vary. He would like the prescription to say that the medication has to be given 12 hours apart for consistency.

## Screening Tools
### Other Screenings

| Encounter Date | Performed Date | Screening Tool | Score | Severity/ Interpretation | MDD Classification | Scanned Document |
|---|---|---|---|---|---|---|
| 11/08/2023 | 11/08/2023 | Patient Health Questionnaire (PHQ-2) | 0 | Further testing is not required | | |

## Problem List
Problem List reviewed.

| Problem Description | Onset Date | Chronic | Clinical Status | Notes |
|---|---|---|---|---|
| Benign hypertension | 04/30/2018 | N | | |

## Past Medical/Surgical History
(Detailed)

| Disease/disorder | Onset Date | Management | Date | Comments |
|---|---|---|---|---|
| | | Hernia repair | 2001 | |
| Arthritis | | | | |
| Asthma | | | | |
| carpal tunnel | | | | |

EXHIBIT
# 15

CJRA_T,CLOSED

# U.S. District Court
## Southern District of Illinois (East St. Louis)
## CIVIL DOCKET FOR CASE #: 3:09-cv-00074-GPM

Jolly v. Hinkle et al

Assigned to: Judge G. Patrick Murphy

Demand: $50,000

Cause: 42:1983 Prisoner Civil Rights

Date Filed: 01/26/2009

Date Terminated: 06/22/2009

Jury Demand: None

Nature of Suit: 550 Prisoner: Civil Rights

Jurisdiction: Federal Question

**Plaintiff**

**Ronald D. Jolly**

represented by **Ronald D. Jolly**
S05734
CENTRALIA CORRECTIONAL CENTER
9330 Shattuc Road
PO Box 7711
Centralia, IL 62801
Email:
PRO SE

V.

**Defendant**

**Jim Hinkle**
*Sheriff*

**Defendant**

**Michael Miller**
*Correctional Officer*

Email All Attorneys

Email All Attorneys and Additional Recipients

| Date Filed | # | Docket Text |
|---|---|---|
| 06/22/2009 | 9 | JUDGMENT in favor of Jim Hinkle and Michael Miller against Ronald D. Jolly. Signed by Judge G. Patrick Murphy on 6/22/2009. (jwt) (Entered: 06/22/2009) |
| 06/22/2009 | 8 | MEMORANDUM AND ORDER Dismissing case pursuant to 28 U.S.C. Sec. 1915A; this dismissal counts as a "strike" for purposes of 28 U.S.C. Sec. 1915(g); and Denying 6 MOTION to Appoint Counsel.. Signed by Judge G. Patrick Murphy on 6/22/2009. (jwt) (Entered: 06/22/2009) |
| 06/22/2009 | 7 | ORDER Directing Monthly Payments be made from Prison Account of Ronald Jolly; Granting 2 MOTION for Leave to Proceed in forma pauperis. IPFF set at $3.30. Signed by Judge G. Patrick Murphy on 6/22/2009. (jwt) (Entered: 06/22/2009) |